UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 24-cr-105-JEB |
| v. | : | |
| | : | 18 U.S.C. § 231(a)(3) |
| MATTHEW BRENT CARVER | : | (Civil Disorder) |
| | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Matthew Brent Carver, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives

and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.  Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Matthew Brent Carver's Participation in the January 6, 2021, Capitol Riot*

8.  Matthew Brent Carver travelled from Kentucky to Washington D.C. to attend then-President Trump's speech on January 6, 2021. After the rally, Carver walked to the U.S. Capitol Building along Constitution Avenue N.W. and entered the Capitol Building and Grounds' restricted perimeter on the west side of the Capitol grounds. Carver remained within the restricted perimeter on the West Front of the U.S. Capitol Building for some time, and eventually ascended the partially-covered stairs on the northwest side of the U.S. Capitol Building, making his way onto the Upper West Terrace.

9. After making his way onto the Upper West Terrace, Carver remained in that restricted area for some time. While Carver was on the Upper West Terrace, it progressively filled with members of the crowd attempting to breach the Capitol Building. In fact, the Senate Wing Doors were breached—for the second time on January 6—at around 2:30 pm, while Carver was standing close by.

10. Around 2:45 pm, law enforcement officers, including members of the U.S. Capitol Police (USCP) and D.C. Metropolitan Police Department (MPD)—who were performing their official duties at the Capitol on January 6—gathered and formed a police line towards the southern end of the Upper West Terrace. Several minutes later, around 2:47 pm, these officers moved in tandem towards the northern end of the Upper West Terrace in an effort to clear and secure the Upper West Terrace. As the officers advanced they ordered protesters to "Move Back! Move Back!" while they attempted to secure the Upper West Terrace.

11. At around 2:48 pm, as the police line approached the northern end of the Upper West Terrace, Carver emerged from the crowd, assumed an aggressive stance towards the approaching officers, and yelled "Come on! Bring it!" Seconds later, Carver approached MPD Officer T.B., grabbed Officer T.B.'s police baton, and attempted to pull the baton away. Carver was then pulled back into the crowd by another member of the crowd.

12. Shortly afterwards, the police line reformed and continued to push the protesters out of the Upper West Terrace. Carver eventually made his way off of restricted Capitol grounds. During his time within restricted Capitol grounds, and on the Upper West Terrace, Carver was involved in a civil disorder. This civil disorder affected a federally protected function in that a joint session of Congress to certify the presidential election had to be halted and could not resume until officers removed all rioters from the Capitol building and its grounds. The civil disorder also affected interstate commerce because the mayor of the District of Columbia had to institute a

curfew at 6:00 p.m. that day, which resulted in the closure of commercial businesses resulting in substantially reduced sales.

### *Elements of the Offense*

13. The parties agree that 18 U.S.C. § 231(a)(3) (Civil Disorder) requires the following elements:

   a. First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;
   b. Second, at the time of the defendant's act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and
   c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

### *Defendant's Acknowledgments*

14. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that, while within restricted Capitol grounds, and especially in regards to his conduct on the Upper West Terrace, he obstructed, impeded, and interfered with law enforcement officers, that is, officers from the USCP and MPD, who were lawfully engaged in the performance of their official duties incident to, and during the commission of, a civil disorder.

                                              Respectfully submitted,

                                              MATTHEW M. GRAVES
                                              United States Attorney
                                              D.C. Bar No. 481052

By: */s/ Sean P. McCauley*
Sean P. McCauley
Assistant United States Attorney
N.Y. Bar Number 5600523
United States Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Office: (202) 252-1897
Cell: (202) 531-1211
sean.mccauley@usdoj.gov

*/s/Benjamin J. Smith*
Benjamin J. Smith
Assistant United States Attorney
N.Y. Bar Number 5220637
United States Attorney's Office
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-304-0977 (c)
202-252-2428 (o)
Benjamin.smith4@usdoj.gov

6

## DEFENDANT'S ACKNOWLEDGMENT

I, Matthew Brent Carver, have read this Statement of Offense and have discussed it with my attorneys. I fully understand this Statement of Offense. I agree and acknowledge by my signature that this Statement of Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

Date: 11/30/2024  
_____  
Matthew Brent Carver  
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of Offense as true and accurate.

Date: 11/30/2024  
_____  
Ubong Akpan and Tezira Abe  
Attorneys for Defendant